AFFIRM; Opinion issued December 4, 2012.



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

No. 05-11-01069-CR

MARGARITO MENDOZA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court Number Four
Dallas County, Texas
Trial Court Cause No. F11-51553-K

## OPINION

Before Justices Morris, Richter, and Murphy
Opinion By Justice Richter

A jury found appellant Margarito Mendoza guilty of aggravated sexual assault of a child younger than fourteen years of age and sentenced appellant to confinement for life and a $10,000 fine. In three issues on appeal, appellant challenges the sufficiency of the evidence to support his conviction, contends the trial court erred in failing to suppress the transcription of his statements to the police, and argues the prosecutor committed reversible error by urging jurors to consider the amount of punishment in determining whether to convict appellant of aggravated sexual assault or the lesser included offense of sexual assault. Finding no reversible error, we affirm the judgment of the trial court.

# BACKGROUND

Complainant, Alicia Garza, testified that when she was eleven years old, she lived with her mother, Ana Sanchez, and Margarito Mendoza, her mother's boyfriend [appellant]. On one occasion when Alicia was eleven years old, appellant touched her vagina with his hand while her mother was at the store. He moved his hand "up and down." Alicia told him to stop and ran to the back room until her mother returned.

Alicia testified that she overheard her mother and appellant talking about the fact that appellant wanted a child but her mother was unable to have more children. Not really understanding what they were talking about and thinking appellant meant a baby doll, Alicia told her mother she would give appellant a baby. A couple months later, Alicia's mother told her it was time to do what she said she would do. Ana forced Alicia into the bedroom with appellant. Appellant threw Alicia on the bed and ordered her to remove her pants. Appellant inserted his penis into Alicia's vagina, causing her pain. When Alicia started bleeding, she ran to the bathroom and screamed for her mother. Her mother laughed at her and told her nothing was wrong. Alicia testified she was twelve-and-a-half or thirteen years old at the time.

Alicia testified that appellant sexually assaulted her every few days. She said her mother knew what was going on because Ana and appellant hit Alicia and pulled her hair if she tried to resist going into the bedroom with appellant. Ana stayed in the living room during the assaults. The assaults continued even after Alicia's brothers, Javier and Nick, came to live with them. Javier Adame, complainant's brother, testified that he saw his

–2–

mother and appellant slap Alicia in the face, pull her hair, and yell at her. He also saw his mother and appellant force Alicia into the bedroom with appellant but he did not know about the sexual abuse. Javier testified that when he heard Alicia yelling and crying, he asked his mother what was going on. His mother told him it was none of his business and to get away from the bedroom door.

Appellant continued sexually assaulting Alicia several times a week until she became pregnant with appellant's child at age fifteen. Alicia gave birth to a baby girl on June 5, 2003. Ana told her not to list appellant as the baby's father on the birth certificate. Ana and appellant named the baby Marissa Marie Garza, and raised her as their own child.

Alicia testified that the family moved to Florida when Alicia was seventeen. Appellant began sexually assaulting Alicia again after the move. One year later, the family returned to Texas but Alicia remained in Florida. In 2009, Alicia was convicted of the federal offense of possession with intent to distribute marijuana in Florida; she served thirteen months in a federal penitentiary and two months in a half-way house.

After she was placed on supervised release, Alicia returned to Texas and visited her relatives. During a family conversation about Marissa, Alicia told a relative, Carmen Rodriguez, that Marissa was her daughter. At the time, Marissa was living with Ana and appellant. When Alicia learned that appellant had taken Marissa out of school, she told Carmen "everything." Carmen Rodriguez testified that she encouraged Alicia to go to the Dallas Police Department in January, 2011, and tell the police everything she had experienced.

Detective Lisette Rivera, a detective in the Dallas Police Department Child Abuse Unit, testified that she investigated Alicia's case. She interviewed Alicia and Carmen, and collected DNA samples from Alicia and Marissa. Detective Rivera obtained arrest warrants for Ana and appellant, and following their arrests, she interviewed Ana while Detective Abel Lopez interviewed appellant. Detective Rivera also collected a DNA sample from appellant, and submitted the three DNA samples for testing and analysis at the Southwestern Institute of Forensic Services (SWIFS) in Dallas.

Detective Abel Lopez, a detective with the Dallas Police Department Child Abuse Unit, testified that he interviewed appellant. Detective Lopez testified that he advised appellant of his constitutional rights and appellant stated that he understood his rights. Appellant then agreed to speak with Detective Lopez. Initially, appellant denied Ana was his girlfriend and told Detective Lopez that Ana was his mother-in-law. Appellant admitted he had lived with Ana for fifteen or sixteen years and later in the interview, admitted that he had "relations" with Ana until she got sick. Appellant told Detective Lopez that Alicia wanted to have sexual relations with him and said they had sex to have a baby. Appellant told Detective Lopez that he did not have sex with Alicia until she was fourteen or fifteen years old because he did not want any problems with the law. Detective Lopez testified that appellant admitted Marissa was his daughter.

Angela Fitzwater, a forensics biologist at the Southwestern Institute of Forensic Sciences (SWIFS), testified that she conducted DNA testing on samples from three individuals—Alicia Garza, Marissa Garza, and Margarito Mendoza. Based on the results

of her testing, she concluded the probability that Margarito Mendoza was the father of Marissa Garza was greater that 99.9 percent.

Appellant did not present evidence. The jury found appellant guilty of aggravated sexual assault of a child as alleged in the indictment. After hearing punishment evidence, the jury sentenced appellant to confinement for life in the Texas Department of Criminal Justice and a $10,000 fine. This appeal followed.

## DISCUSSION

### A. Sufficiency of the Evidence

In his first issue, appellant challenges the sufficiency of the evidence supporting his conviction for aggravated sexual assault of a child. We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see Adames*, 353 S.W.3d at 860. The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony and therefore, is free to accept or reject any or all evidence presented by either side. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *see also Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

A person commits aggravated sexual assault of a child if he intentionally or knowingly causes the contact or penetration of the sexual organ of a child with his sexual organ, and the victim is younger than fourteen years of age. TEX. PEN. CODE ANN. §§ 22.021(a)(1)(B)(i), (a)(1)(B)(iii), (b)(1) (West Supp. 2012). The testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2012) (requirement that victim inform another person within one year does not apply to person under seventeen at the time of the offense); see also Revels v. State, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.); Tear v. State, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). Here, appellant does not challenge the State's evidence that he intentionally or knowingly contacted or penetrated Alicia's sexual organ with his sexual organ; appellant challenges the evidence that Alicia was younger than fourteen years of age when the sexual contact began.

Alicia testified that she was twelve-and-a-half or thirteen years old when appellant first sexually assaulted her. Appellant argues that Alicia's testimony is unreliable because she was not sure of the exact date when the sexual assaults commenced. However, according to the record, Alicia consistently testified that she was younger than fourteen when the sexual assaults began. Alicia's uncorroborated testimony alone is sufficient to support a conviction for aggravated sexual assault. See TEX. CODE CRIM. PROC. ANN. art. 38.07; see also Tear, 74 S.W.3d at 560.

Appellant also contends that other factors diminish the credibility of Alicia's testimony, such as her felony conviction, and the eight year delay in reporting the sexual

assault. As the sole judge of the credibility of the witnesses and the weight to be given their testimony, the jury was free to accept or reject any or all evidence presented by either side. *See Isassi*, 330 S.W.3d at 638; *Lancon*, 253 S.W.3d at 707. The jury was free to believe Alicia's testimony that appellant began sexually assaulting her when she was twelve-and-a-half or thirteen years old. The jury was free to reject appellant's statement to Detective Lopez that he did not have sexual relations with Alicia until she was fourteen or fifteen years old. We conclude the jury could have found the essential elements of the offense of aggravated sexual assault of a child beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. Appellant's first issue is overruled.

## B. *Miranda* Violation

Appellant asserts the trial court erred in failing to suppress the written transcription of his interview with Detective Lopez. Appellant claims that he did not waive his *Miranda* rights with a full awareness of those rights and the consequences of the waiver. In reviewing claims of *Miranda* violations, we conduct a bifurcated standard of review. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). We give almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon an evaluation of credibility and demeanor. *Id.*; *see also Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011); *Ripkowski v. State*, 61 S.W.3d 378, 381–82 (Tex. Crim. App. 2001) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Alford*, 358 S.W.3d at 652;

*Ripkowski*, 61 S.W.3d at 381–82.

The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). Article 38.22 of the Texas Code of Criminal Procedure establishes procedural safeguards for securing the privilege against self-incrimination. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005). Among its requirements, it provides that no oral statement of a defendant made as a result of custodial interrogation shall be admissible against the defendant in a criminal proceeding unless the defendant was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *Id.* §3. The defendant must be informed of the following rights:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time.

*Id.* §2(a); *see Miranda*, 384 U.S. at 444. There are two facets to any inquiry with respect to the adequacy of a purported waiver of *Miranda* rights. *Leza*, 351 S.W.3d at 349. First, the waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Id.*; *see also Joseph*, 309 S.W.3d at 25

–8–

(citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, the waiver must be made with a full awareness of the nature of the right being abandoned, and the consequences of the decision to abandon it. *See Ripkowski*, 61 S.W.3d at 384 (citing *Colorado v. Spring*, 479 U.S. 564, 573 (1987)). Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Joseph*, 309 S.W.3d at 25 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). Appellant does not assert he was not warned of his rights. Rather, appellant argues that he did not waive his rights with the full awareness of those rights and of the consequences of the waiver.

According to the record, Detective Lopez gave appellant the *Miranda* warning and asked appellant if he understood his rights. Appellant responded that he understood all of his rights, and then stated: "Yes, that...yes that if I speak (sic) that I stay silent, that they don't use it against me and...I have the right to look for a lawyer." Appellant now argues that this statement reflects that appellant did not understand that he had the right to have a lawyer present to advise him during the interrogation. At the pre-trial hearing, appellant challenged the voluntariness and admissibility of any oral or written statements made during the course of his interrogation by Detective Lopez. The State offered into evidence a video of the interview between Detective Lopez and appellant, and a transcript of the interview from Spanish into English. Detective Lopez testified for the State, explaining that he advised appellant of his constitutional rights, including the right to an appointed attorney, and that appellant understood each of the rights and the effect of waiving those rights. On

cross-examination, Detective Lopez was asked about appellant's statement, "I have the right to look for a lawyer," and whether that statement reflected an accurate understanding of appellant's rights. Detective Lopez testified that the remark was a statement made by appellant and not a question. Detective Lopez explained that he interpreted appellant's remark as follows:

> Again, you know, when he said that to me, he is reiterating – to me, he is understanding that he has the right to look for an attorney, and at that point in time if he wanted an attorney he could have asked for one, and he did not. That's the way I understood his response, that he knew he had the right to it, yet he didn't even ask for one.

The record reflects that appellant was adequately advised of his rights in Spanish. When asked by Detective Lopez if he understood his rights, appellant stated that he did. Immediately after being told that he had the right to remain silent, that he did not have to make any statement to anyone, and that any statement he made would be used against him, he willingly participated in an interview with Detective Lopez. He did not remain silent, did not discontinue his dialogue with Detective Lopez, and did not ask for an attorney at any time during the interrogation. Based on the totality of the circumstances, as reflected by the transcription of the video, the trial court was clearly within its discretion in finding that appellant understood his rights and the effect of waiving those rights. *See Leza*, 351 S.W.3d at 353; *see also Joseph*, 309 S.W.3d at 27. We conclude the trial court did not err in overruling appellant's objection to the introduction of the transcription of appellant's statements to Detective Lopez. *See Joseph*, 309 S.W.3d at 27. Appellant's second issue is overruled.

## C. Prosecutor Error

In his third issue on appeal, appellant contends that "during the guilt-innocence stage of the trial, the prosecutor committed reversible error by urging the jurors not to find appellant guilty of the lesser-included offense of sexual assault because it carried lesser punishment than the offense of aggravated sexual assault." The State responds there was no reversible error because the prosecutor did not urge the jury to convict appellant based on a punishment range instead of the facts.

The four generally approved areas for jury argument are: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010); *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007). During the guilt-innocence stage of trial, "a plea to the jury to consider the amount of punishment, rather than the facts, in determining the offense for which an appellant should be convicted is manifestly improper." *McCullen v. State*, 659 S.W.2d 455, 459 (Tex. App.—Dallas 1983, no pet.) (citing *McClure v. State*, 544 S.W.2d 390, 393 (Tex. Crim. App. 1976), overruled on other grounds by *Werner v. State*, 711 S.W.2d 639, 646 (Tex. Crim. App. 1986)); *see also Wright v. State*, 178 S.W.3d 905, 930 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). But the harm from such remarks will ordinarily be cured by an instruction to disregard, unless the statements were so manifestly improper as to inflame and prejudice the minds of the jury. *See McClure*, 544 S.W.2d at 393; *see also Bruton v. State*, 921 S.W.2d 531, 536 (Tex. App.—Fort Worth 1996, pet. ref'd).

In reviewing the record, we do not find the prosecutor's argument was such that it required the jury to convict on one offense over the other because of the difference in punishment. The argument complained of was made in the course of explaining why the facts showed the commission of aggravated sexual assault and why appellant's defense that he was guilty only of the lesser included offense of sexual assault of a child was weak in relation to the facts in evidence. The prosecutor asked the jury to convict appellant of the charged offense, stating:

> I explained to you it was aggravated because it happened before she was 14. There is no doubt that it happened when she was under the age of 17. We know that because of Marissa. We know that because of the DNA. We know that because of his own confession that, yes, he had a daughter by the victim in this case, Alicia. There is no doubt that he is guilty of Sexual Assault of a Child but there is also no doubt that he is guilty of Aggravated Sexual Assault of a Child. You see, Sexual Assault of a Child is what we call a lesser included offense. It is lesser. It is less serious. It is a second degree felony. It has a lot of consequences. And he is the one who committed --

Appellant's counsel objected to the prosecutor talking about the consequences of the jury's verdict, and the trial court overruled the objection. The prosecutor did not continue to discuss the classification of sexual assault of a child as a second degree felony, and instead focused on appellant's guilt based on the facts of the case. The prosecutor's argument made no mention of the punishment range for aggravated sexual assault of a child or sexual assault of a child. Thus, the record does not support the conclusion that the prosecutor was suggesting appellant should be convicted of the greater offense because of the amount of punishment. We conclude the prosecutor's statements were not so manifestly improper as to constitute reversible error. *See McCullen*, 659 S.W.2d at 459. Appellant's third issue is

overruled.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment

MARTIN RICHTER
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

111069F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARGARITO MENDOZA, Appellant

No. 05-11-01069-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court
Number Four of Dallas County, Texas.
(Tr.Ct.No. F11-51553-K).
Opinion delivered by Justice Richter,
Justices Morris and Murphy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 4, 2012.

MARTIN RICHTER
JUSTICE